Argued and submitted May 29, vacated and remanded for reconsideration
July 23, 2014

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DOMINIC DAVID SMITH,
*Defendant-Respondent.*

Marion County Circuit Court
11C51195; A151520

332 P3d 326

Matthew J. Lysne, Senior Assistant Attorney General, argued the cause for appellant. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Daniel C. Bennett, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

In this pretrial appeal, the state contends that the trial court erred in dismissing the criminal charges against defendant, pursuant to ORS 161.370(9)(a),[1] on the ground that it lacked authority to order the involuntary administration of medication for the purpose of restoring defendant's competence to stand trial. Recently, in *State v. Lopes*, 355 Or 72, 322 P3d 512 (2014), the Supreme Court held that Oregon trial courts have such authority under ORS 161.370. Accordingly, we vacate and remand for reconsideration in light of *Lopes*.

The facts are procedural and undisputed. Based on conduct that allegedly occurred in 2011, defendant was charged with two counts of third-degree robbery, ORS 164.395, which is a Class C felony, and third-degree theft, ORS 164.043, which is a Class C misdemeanor. Thereafter, in December 2011, in response to a motion filed by defense counsel, the trial court issued an order finding that defendant was "unfit to proceed" and committing him "to the custody of the Superintendent of the Oregon State Hospital [(OSH)] for evaluation and treatment as appropriate pursuant to the provisions of ORS 161.370[.]"

---

[1] ORS 161.370(9) provides, in part:

"If the court determines that there is no substantial probability that the defendant, in the foreseeable future, will gain or regain the capacity to stand trial or that the defendant is entitled to discharge under subsection (6) of this section, the court shall dismiss, without prejudice, all charges against the defendant and:

"(a) Order that the defendant be discharged[.]"

We note that the parties on appeal and trial court in this case have assumed that the current version of ORS 161.370 applies–as it did in the Supreme Court's recent opinion in *State v. Lopes*, 355 Or 72, 322 P3d 512 (2014). Here, that assumption is incorrect. ORS 161.370 was amended twice in 2011. Or Laws 2011, ch 508, § 1; Or Laws 2011, ch 724, § 8. The amendments made by Oregon Laws 2011, chapter 508, became effective on June 23, 2011. However, the amendments effected by Oregon Laws 2011, chapter 724, "apply to prosecutions for conduct occurring on or after January 1, 2012." Or Laws 2011, ch 724, § 12(1). Because the criminal charges against defendant are based on conduct that allegedly occurred in 2011, ORS 161.370 as amended by Oregon Laws 2011, chapter 508, is the version of the statute that applies in this case. Further, for purposes of resolving this case, it is immaterial that, in deciding *Lopes*, the Supreme Court applied the current version of ORS 161.370–that is, the version of ORS 161.370 as amended by Oregon Laws 2011, chapters 508 and 724. That is so because the chapter 724 amendments did not bear on the Supreme Court's reasoning and holding in *Lopes*. Thus, except when referring to *Lopes*, all references to ORS 161.370 are to ORS 161.370 as amended by Oregon Laws 2011, chapter 508.

In February 2012, a psychologist at OSH evaluated defendant and issued a report in which she rendered her opinion that defendant "is not a substantial danger to others" but that he suffers from a mental disease and, as a result, defendant "is currently unfit to proceed with the criminal matter pending against him" and that there is "no substantial probability that, in the foreseeable future, his psychiatric condition will improve enough (regain) for him to participate meaningfully in his legal defense." (Boldface omitted.) The evaluator explained that her opinion was "based on the fact [that defendant] is unwilling to take psychotropic medication" and "does not meet involuntary medication criteria and his * * * symptoms are unlikely to remit without this type of intervention."

Thereafter, defendant moved for dismissal of the criminal charges against him in light of OSH's evaluation. In response, the state sought an order directing OSH to involuntarily medicate defendant. At the subsequent hearing, the parties and trial court focused on two issues—*viz.*, whether the trial court had authority to order the involuntary administration of medication for the purpose of restoring defendant's competence to stand trial and, if it did, whether the state had proved that such an order would comport with the constitutional limitations described in *Sell v. United States*, 539 US 166, 123 S Ct 2174, 156 L Ed 2d 197 (2003). In support of its motion, the state offered evidence on the factors required to support a *Sell* order.[2]

Following the hearing, the court issued a letter opinion in which it made the following findings:

---

[2] As the Supreme Court explained in *Lopes*, the factors required to support a *Sell* order are as follows:

"(1) that important state interests are at stake in prosecuting the defendant; (2) that medication will significantly further those important state interests, because it is substantially likely that the medication will restore the defendant to competency and substantially unlikely that the medication will cause side effects that will impair the fairness of the trial; (3) that the medication is necessary to further those important state interests, because there are no less intrusive treatments that would produce the same results; and (4) that the administration of the medication is medically appropriate, because it is in the patient's best medical interest in light of his medical condition."

355 Or at 91.

"1) The defendant suffers from mental disorders which render him unable to aid and assist for the purpose of trial;

"2) The defendant is not presently a danger to himself or others;

"3) The administration of certain antipsychotic medications, over a six month period, is likely to restore the defendant's competency to stand trial * * *;

"4) The treatment plan and the dosage range is medically appropriate;

"5) There is no less intrusive means of treatment which will achieve a substantially similar result;

"6) The medications contained in the treatment plan do not present a substantial risk of the defendant experiencing harmful side effects which will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense;

"7) The defendant will not voluntarily take the antipsychotic medication;

"8) Important governmental interests are at stake in bringing to trial an individual accused of serious crimes, in this case two separate incidents of Robbery III."

Nevertheless, the trial court concluded that it lacked authority under Oregon law to direct OSH to involuntarily medicate defendant:

"An analysis of *Sell* demonstrates that existing state regulation is the condition precedent for court mandated restoration of competency via involuntary medication. *Absent a direct grant of authority by statute or rule, the state lacks jurisdiction to invade the constitutionally protected liberty interest of avoiding the unwanted administration of antipsychotic medication.*"

(Emphasis added.) For that reason, the court granted defendant's motion to dismiss the criminal charges, ORS 161.370(9)(a), and this appeal ensued.

While the parties were in the process of completing their appellate briefs, the Supreme Court decided *Lopes*. In

*Lopes,* the court held that "ORS 161.370 grants trial courts authority to commit defendants to hospitals for treatment that is designed to restore their trial competency" and that, "[b]y implication, that statute also grants trial courts authority to issue *Sell* orders when necessary to enable hospitals to provide that treatment." 335 Or at 89.

The state contends that *Lopes* is dispositive here. Specifically, the state asserts that the Supreme Court's core holding—that is, under ORS 161.370, trial courts have "authority to issue *Sell* orders when necessary to enable hospitals to provide * * * treatment" designed to restore a defendant's trial competency, *Lopes,* 355 Or at 89—contradicts the trial court's premise (emphasized above) in dismissing the criminal charges against defendant. Accordingly, the state reasons that this matter must be reversed and remanded in light of *Lopes.*

We agree with the state that *Lopes* flatly contradicts the trial court's expressed basis for granting the motion to dismiss. Thus—albeit in light of subsequent Supreme Court authority—the trial court erred. Defendant posits, however, that the trial court's disposition (that is, the dismissal of the charges) should be affirmed on a number of alternative grounds. For the reasons that follow, several of those contentions are unavailing, and we reject the balance without published discussion.

Defendant initially contends that, even if a trial court has statutory authority to order the involuntary administration of medication for the purpose of restoring a defendant's competence to stand trial, that authority only exists "[i]f *the superintendent or director* determines that there is a substantial probability that, in the foreseeable future, the defendant will gain or regain the capacity to stand trial," ORS 161.370(5) (emphasis added), and such a determination does not exist in this case. The fundamental flaw in defendant's contention is that it is irreconcilable with the factual predicate underlying the Supreme Court's decision in *Lopes,* where

> "the hospital sent the trial court a letter stating that there was no substantial probability that relator would gain or regain the ability to stand trial in the foreseeable future. In

the accompanying report, the evaluator specifically stated that *'[w]ithout an ability to provide psychiatric medication interventions* there is no substantial probability that [relator] will regain the ability to proceed within the foreseeable future."

355 Or at 74 (emphasis and brackets in *Lopes*). As noted above, 264 Or App at 324, the circumstances in this case are indistinguishable.

Defendant next posits, as an alternative basis for affirmance, that the court's "findings would not support the issuance of [a *Sell*] order to forcibly medicate defendant because none of the [*Sell*] factors were explicitly found by clear and convincing evidence." (Boldface omitted.) With respect, that misses the mark as an alternative basis for affirmance of *the dismissal of the charges against defendant pursuant to ORS 161.370(9)(a)*, given that the court did not engage in a complete *Sell* analysis. Indeed, the trial court did not issue a *Sell* order—which must be supported by clear and convincing evidence, *Lopes*, 355 Or at 100—because it erroneously concluded that it lacked authority to do so.

Finally, defendant contends that, because the trial court incorrectly "determined that defendant was accused of committing a 'serious' crime," it could not have issued a *Sell* order in this case. *See Lopes*, 355 Or at 92 (explaining that, with regard to the first *Sell* factor, "bringing a defendant to trial on a 'serious' charge is a sufficiently important governmental interest to justify involuntary medication"). However, "our consideration of an alternative basis for affirmance is a matter of prudential discretion and not compulsion." *Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 56, 245 P3d 688 (2010). Here, we decline to exercise that discretion in light of the fact that the Supreme Court's opinion in *Lopes* addressed issues of first impression and provided guidance concerning the nature and application of each of the *Sell* factors. *See, e.g., Lopes*, 355 Or at 94 ("Although the determination of whether a crime is 'serious' is a question of law, the sentence that a defendant likely will face if convicted may be, in some instances, a question of fact, and it is helpful when a trial court specifically includes both the maximum and the likely sentence that a defendant

may face in its *Sell* order."). Those circumstances militate against our consideration of defendant's contention in the first instance.

In sum, having rejected defendant's contentions to the contrary, we vacate the trial court's dismissal of the criminal charges against defendant and remand for reconsideration in light of *Lopes*. Further, we note that the evidence adduced at the original hearing is now more than two years old and defendant's circumstances may have changed since that hearing. For that reason, as the parties acknowledged at oral argument, in determining whether to order the involuntary administration of medication for the purpose of restoring defendant's competence to stand trial, the trial court, on remand, must consider evidence of defendant's current circumstances.

Vacated and remanded for reconsideration.